**Marie B. JONES, Plaintiff–Appellant,**

v.

**DEPT. OF HEALTH & HUMAN SERVICES, Defendant–Appellee.**

No. 87–1783
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 2, 1988.

Rehearing Denied June 13, 1988.

Marie B. Jones, pro se.

Charles D. Cabaniss, Asst. U.S. Atty., Joseph B. Liken, D.H.H.S., Dallas, Tex., for defendant-appellee.

Before REAVLEY, KING and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Marie Jones is a senior citizen who believes that the Social Security Administration ("SSA") treated her shabbily. She contends that the SSA gave her bad advice that cost her $1,100 in benefits and now hides behind its legal defenses to bar the once-legitimate claim she would have made. Although we can empathize with Mrs. Jones' feelings of frustration in the face of a bureaucratic colossus, we must follow the applicable law, which renders us powerless to grant her relief.

I

This case is an example of how the government's brain often fails to control the movement of its fingers. Mrs. Jones is a senior citizen living in Dallas, Texas. Mrs. Jones was born June 5, 1921. After forty years of marriage she was divorced from her husband in December 1982. In May 1983 she telephoned the SSA's Grand Prairie Teleservice Center. She asked whether she could begin receiving early retirement benefits and later utilize her ex-husband's work records as a basis for her benefits under a new law which entitled divorced spouses' to receive the higher benefits based on their ex-spouses' records. Mrs. Jones was told by a Teleservice representative that by accepting retirement benefits based on her own employment record, she would be barred from receiving the larger, divorced-spouse benefits for which she would be eligible in 1985. This information was incorrect. Mrs. Jones' sister, Clarice Soven, made a similar telephone call to the Teleservice Center and received similar erroneous information. Relying upon this erroneous advice, Mrs. Jones did not file for benefits until October 1984. Soon afterwards, she received a check from the SSA for early retirement benefits unrelated to her divorced-spouse benefits, which prompted her to inquire further. She was then informed that if she had filed in May 1983, she could have received early retirement benefits from June 1983 through the time of her filing for divorced-spouse benefits in October 1984. Mrs. Jones was told, however, that because she had made no written application in May 1983, she had forfeited the $1,100 of early retirement benefits for that period.

II

Mrs. Jones, with the aid of her sister, Mrs. Soven, set out to rectify SSA's error. Although the SSA has stubbornly persisted in defending its bureaucratic error, Mrs. Jones and Mrs. Soven have not been daunted. In addition to pursuing the claim through the normal administrative and judicial processes, including this *pro se* appeal, they have further pled Mrs. Jones' cause by writing to the Secretary of Health and Human Services and their United States senator.

Her cause began with an early defeat. In the Dallas district manager's initial denial of retroactive benefits, Mrs. Jones was informed that the filing date could be changed for "good cause," but since she had failed to identify who at the Grand Prairie Teleservice Center had wrongly advised her, no good cause was shown.[1]

1. The Social Security Act and its regulations are silent on whether a good-cause exception exists where an applicant receives erroneous oral information, and we are advised by the Secretary that no such rule exists. We thus must conclude that either the exception is an informal rule that the local SSA follows or that the district manager erred.

Then, things turned upward when the district manager changed his opinion after his office investigated the Teleservice Center and discovered that its personnel were indeed giving out the subject erroneous information as late as November 1985. In a letter dated December 9, 1985, the district manager wrote the Reconsideration Board in New York, and requested that Mrs. Jones' application date be changed to June 1983.

Winning over the district manager was, alas, Mrs. Jones' one and only breakthrough in this bureaucratic botch. The Reconsideration Board did not heed the district manager's advice to pay the $1,100 claim. In February 1986, Mrs. Jones requested a *de novo* hearing before an administrative law judge ("ALJ"), which was held in May 1986. The ALJ held that she had failed to prove that she was misinformed by the SSA office, but that even if such a conversation had taken place, Mrs. Jones could not estop the government from asserting applicable statutory law to deny her claim. On November 14, 1986, the Appeals Council gave the final administrative boot to Mrs. Jones' personal crusade, and the ALJ's decision became the final decision of the SSA.

Bruised, but still undaunted, Mrs. Jones, with the help of her sister, brought her cause to federal court. The district court, unable to lend its hand, held that Mrs. Jones had not presented a case of estoppel against the government and therefore denied her claim.

### III

Mrs. Jones now appeals *pro se* to this court, and asks that justice at last be rendered. She contends that because she was misadvised, the government is estopped from barring her claim, that the Social Security Act unconstitutionally discriminates against early retirees, and that she was denied a fair administrative hearing. We have no basis, we are sad to say, upon which to offer any help.

### A.

Under the Social Security Act, formal application for retirement benefits must be made before such benefits can be granted. 42 U.S.C. § 402(j)(4)(A). Since Mrs. Jones admittedly did not file a written application until October 1984, she cannot claim benefits prior to that date. Mrs. Jones asserts, however, that the government should be estopped from denying her benefits for the period from June 1983 to October 1984 because she received erroneous oral information that caused her not to make a timely application.

A private individual asserting estoppel against the government has a very heavy burden to bear. *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Erroneous oral statements by a government agent, without more, are insufficient to apply estoppel. *Id.* at 64, 104 S.Ct. at 2226. The present situation is very similar to one in which the Supreme Court specifically has denied estoppel. *See Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981). In *Hansen*, the Court held that erroneous oral statements made by an SSA field representative that the plaintiff was not eligible for benefits, and the failure to recommend that the plaintiff file a written application did not estop the SSA from denying retroactive benefits under 42 U.S.C. § 402(j). Thus, under the law that binds us, the government is not estopped from barring Mrs. Jones' requested retroactive benefits.

Nor will Mrs. Jones' other grounds for estoppel carry the day for her. She asserts that SSA agents did not follow the Claims Manual, which requires an agent to inform an applicant of the need to file a written application. In *Hansen*, however, the Supreme Court concluded that the Claims Manual had no legal force and did not bind the SSA. *Id.* Thus, failure to follow the manual does not constitute grounds for estoppel. *Id.* at 789–90, 101 S.Ct. at 1471.

### B.

Mrs. Jones' second contention is that section 202(j) of the Social Security

Act unconstitutionally discriminates against early retirees by denying them retroactive benefits. Such a constitutional challenge involving a noncontractual benefit will succeed only "if the statute manifests a patently arbitrary classification, utterly lacking in rational justification." *Bowen v. Owens,* 476 U.S. 340, 106 S.Ct. 1881, 1885, 90 L.Ed.2d 316 (1986) (quoting *Flemming v. Nestor,* 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435 (1960)). As evident from the legislative history of section 202(j), this provision was promulgated in order to protect the long-term benefits of individuals filing for early retirement. H.R.Rep. No. 702, 95th Cong., 1st Sess. pt. I at 52–53, *reprinted in* 1977 U.S.Code Cong. & Admin.News 4155, 4209–10. Specifically, the House Ways and Means Committee concluded that if early retirees accepted a higher, one-time retroactive benefit payment, then their future monthly payments would be permanently reduced. *Id.* The committee determined that retroactive benefits were thus not in the best interest of early retirees and therefore approved section 202(j). There is no doubt this reason is sufficient to survive a constitutional challenge.

### C.

Mrs. Jones next contends that the administrative hearing was unfair because her representative was not advised of her rights or given the opportunity to ask questions. A review of the record reveals that the SSA informed Mrs. Jones of her right to have a representative at the hearing, the right to ask questions and the right to present evidence. Moreover, the ALJ complied with these requirements at the hearing and gave Mrs. Jones the opportunity to present post-hearing evidence. In the light of these facts, the administrative hearing was conducted within the constitutional parameters of *Mathews v. Eldridge,* 424 U.S. 319, 349, 96 S.Ct. 893, 909, 47 L.Ed.2d 18 (1976).

### IV

Although it is clear that under relevant case law Mrs. Jones' claim must be dismissed, we are very sympathetic with her plight. She has been misled and unjustifiably denied her rightful benefits at a time when she seriously needed funds. There seems little question that she received erroneous telephone information from SSA employees. Indeed, the district manager acknowledged that after an investigation by his office, he found that the Teleservice Center was *still* issuing similar erroneous information as late as November 1985.

Nevertheless, we are bound to follow *Hansen,* which in effect holds that the SSA can deny benefits for failure to follow agency rules to one who obediently follows the rules communicated to her by the agency. Such is life in the post–1984 Orwellian bureaucracy.

The judgment of the district court is therefore

AFFIRMED.