**Janice Edmonson DUTHU, Plaintiff–Appellant,**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services, Defendant–Appellee.**

No. 88–3841.

United States Court of Appeals, Fifth Circuit.

Oct. 16, 1989.

Jerri G. Smitko, Duval, Funderburk, Sundbery & Lovell, Houma, La., for plaintiff-appellant.

Marguerite Lokey, Dallas, Tex., for defendant-appellee.

Before KING, JOLLY and DUHE, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Because of her unfamiliarity with the intricacies of the Social Security Act and Social Security Administration ("SSA") regulations, Janice Duthu relied on erroneous information given to her by SSA employees, resulting in the loss of approximately five years of benefit payments due to her children. Mrs. Duthu contends that it is inequitable for the SSA to deny those benefits on the basis of her lack of knowledge

of the technicalities of rules with which the SSA's own employees are unfamiliar. We sympathize with Mrs. Duthu and her children, and acknowledge the irony of a bureaucratic system which, in effect, may require laypersons to know more about SSA regulations than the SSA's own employees are required to know. Nevertheless, the SSA's actions were not of the character to estop the SSA from requiring compliance with its regulations.

## I

In December 1979 Janice Duthu learned that her children's father, her former husband James R. Dugan, had disappeared en route to Venezuela and was presumed dead as a result of a plane crash. In January 1980 Mrs. Duthu telephoned the SSA office in Houma, Louisiana, and inquired about filing an application for surviving child's insurance benefits on behalf of her two children. An employee erroneously informed her that she could not file an application for benefits until she obtained more evidence of her ex-husband's death, and that, without evidence of death, she would have to wait seven years to file.

Mrs. Duthu did not accept this answer as the final word. In March 1980 Mrs. Duthu, with her mother along, went to the SSA office and an employee told them that it would be futile to file an application without evidence of her former husband's death. When Mrs. Duthu asked the employee to make a written record that she had attempted to file and that she intended to do so when she had evidence of Mr. Dugan's death, he told her that such a written record would not be noticed by the SSA office.

About two or three years later, with hope rising from desperation, Mrs. Duthu returned to the SSA office yet again, and attempted once more to apply for surviving child's insurance benefits. Another SSA employee, identified by her as Mrs. Castanza, told her that she could not apply until she produced evidence of Mr. Dugan's death. Mrs. Duthu insisted that Mrs. Castanza make a written record of her visit and attempt to file, but Mrs. Castanza told

her that such a record would not do any good and would waste the SSA's time.

Finally, believing that seven years had passed since Mr. Dugan's disappearance, Mrs. Duthu returned to the SSA office in October 1985. Mrs. Castanza informed her that she could not file for one more year. Mrs. Duthu again asked Mrs. Castanza to make a written record of her attempt to file; again, Mrs. Castanza refused.

After hearing of Mrs. Duthu's plight and frustrations, a friend suggested that she contact Mrs. Tregg, an SSA administrator. In November 1985 Mrs. Tregg told Mrs. Duthu that she could file for benefits immediately, and that she could have applied for benefits in January 1980, when Mrs. Duthu first telephoned the SSA to inquire about filing for benefits.

## II

On December 16, 1985 Mrs. Duthu filed a formal written application for surviving child's insurance benefits on behalf of her children James and Kelly Dugan. The SSA ruled that their father died in a plane crash on December 18, 1979; that Kelly was not entitled to surviving child's insurance benefits because she did not meet the age requirements during the months for which the application applied (May through November 1985); and that James was entitled to receive surviving child's insurance benefits effective May 1985. The SSA upheld this determination on reconsideration and the case was referred to an administrative law judge ("ALJ") for an administrative hearing and *de novo* review.

The ALJ found that the actions of the SSA employees constituted affirmative misconduct, and held that the government was estopped from requiring compliance with its regulations requiring filing of a written application. The ALJ determined that the children were entitled to receive surviving child's insurance benefits effective March 1980 based on Mrs. Duthu's oral application for benefits at that time. On its own motion, the Appeals Council reviewed and modified the ALJ's decision, holding that Kelly was not entitled to receive any bene-

fits, and James was entitled to receive benefits only as of May 1985.

Mrs. Duthu, Kelly, and James sought review in district court. Their case was referred to a magistrate, who recommended that summary judgment be entered in their favor. The district court sustained the Secretary's objection to the magistrate's recommendation and granted the Secretary's motion for summary judgment.

### III

Mrs. Duthu and her children appeal to this court, contending that the actions of the SSA employees constituted affirmative misconduct estopping the Secretary from enforcing the regulation requiring written application for benefits. The applicable law, however, supplies us with no basis for affording relief to Mrs. Duthu for the ineptitude of the government's employees.

Under the Social Security Act, the filing of a formal application for child's insurance benefits is a prerequisite to the receipt of such benefits. 42 U.S.C. § 402(d)(1)(A). The application must be in writing and on a form prescribed by the Secretary. 20 C.F.R. § 404.610, 404.611. Because Mrs. Duthu did not file a written application until December 1985, her children cannot claim benefits for a period in excess of six months prior to that date. 20 C.F.R. § 404.603. Mrs. Duthu argues, however, that the Secretary should be estopped from denying benefits to her children for the period from March 1980 (the date of her first visit to the SSA office) to December 1985 because her failure to file a written application was the result of misconduct on the part of SSA employees.

A private individual asserting estoppel against the government bears a heavy burden. *Heckler v. Community Health Services*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2224, 81 L.Ed.2d 42 (1984). Erroneous oral statements by a government agent, without more, are insufficient to apply estoppel. *Id.* at 64, 104 S.Ct. at 2226. In a case involving somewhat similar circumstances, the Supreme Court held that an SSA field representative's erroneous oral statements regarding an applicant's eligibility, and the representative's failure to recommend that the applicant file a written application, did not estop the SSA from denying retroactive retirement benefits under 42 U.S.C. § 402(j). *See Schweiker v. Hansen*, 450 U.S. 785, 101 S.Ct. 1468, 67 L.Ed.2d 685 (1981).

In a recent Fifth Circuit case involving facts similar to those in *Hansen* and the instant case, we followed *Hansen* and held that the SSA can deny benefits for failure to follow agency rules even to one who obediently follows the instructions communicated by the agency. *See Jones v. Department of Health & Human Services*, 843 F.2d 851, 854 (5th Cir.1988).

Mrs. Duthu argues that the instant case is factually distinguishable from *Hansen* and *Jones*. She argues that, in addition to giving her oral misinformation, and failing to advise her of the advantages of filing an application, the SSA employees refused to allow her to file an application and also refused to provide written confirmation of her visits. Mrs. Duthu contends that these actions are sufficiently more egregious than the conduct at issue in *Hansen* and *Jones* to constitute the type of "affirmative misconduct" necessary to estop the government from insisting on compliance with valid regulations governing the distribution of welfare benefits.

The record supports Mrs. Duthu's contention that her efforts to protect her children's rights exceeded the efforts made by the claimants in *Hansen* and *Jones*. Mrs. Duthu telephoned the SSA office once, and made three separate visits to the SSA office in an attempt to secure benefits for her children. She was told that it would be useless to file an application and that it would be a waste of the government's time if she did so. At the conclusion of each of three visits to the SSA office she requested and was refused written confirmation of her visit. In contrast, the plaintiff in *Hansen* met with an SSA representative only once; the plaintiff in *Jones* and her sister each made only one telephone call to an SSA teleservice center.

**100**

We cannot escape the fact, however, that Mrs. Duthu did not file a written application for benefits until December 1985. Although her failure to file the application is explained by the SSA employees' erroneous statements to the effect that filing would be futile and a waste of time, there is no contention here that the SSA actually refused a specific request to make a written application, which conduct might have constituted the sort of affirmative misconduct required for assertion of the doctrine of estoppel. As sympathetic as we are to Mrs. Duthu's position, we find that the blunders of the SSA employees, although more serious than the mistakes made by the government in *Hansen* and *Jones,* were simply not of the character to overcome the well-established rule of *Hansen* that a government employee's misinformation and ineptitude will not estop the government from requiring a written application for benefits.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.