911 F.2d 725
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Carl Robert CHRISTY, Defendant-Appellant.
 No. 89-5812.
 United States Court of Appeals, Fourth Circuit.
 Argued June 8, 1990.
Decided Aug. 22, 1990.
As Amended Oct. 25, 1990.
Rehearing and Rehearing In Banc Denied Oct. 10, 1990.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. James C. Fox, District Judge. (CR-89-9)
 Frank Joseph Petrella, Atlanta, Georgia, for appellant.
 Thomas Michael Gannon, Criminal Division, United States Department of Justice, Washington, D.C., (argued), for appellee; Margaret Person Currin, United States Attorney, J. Douglas McCullough, Assistant United States Attorney, Raleigh, N.Ca., on brief.
 E.D.N.C.
 AFFIRMED.
 Before ERVIN, Chief Judge, K.K. HALL, Circuit Judge, and MICHAEL, United States District Judge for the Western District of Virginia, Sitting by Designation.
 PER CURIAM:
 
 
 1
 This case is before the court on appeal from the appellant's conviction by a two-day jury trial in the Eastern District of North Carolina. Jurisdiction of this court is predicated upon 28 U.S.C. Sec. 1291. The appellant [hereinafter "Christy"] presents the following issues for review: (1) that the court below erred in applying the 1987 Sentencing Guidelines to Christy's offense; (2) that the court below erred in admitting evidence concerning Christy's 1984 drug-related activities in Florida in violation of his fifth and sixth amendment rights; (3) that the court below erred in refusing to grant Christy's motion to suppress certain electronic surveillance evidence in violation of his fourth amendment right against unreasonable searches and seizures; and (4) that the court below erred by refusing to order a downward departure under the Sentencing Guidelines in violation of Christy's due process and equal protection rights. These issues will be discussed seriatim.
 
 
 2
 Factually, the record indicates with complete clarity that Christy was a major drug distributor in the North Carolina area from 1983 until the end of 1987. Christy, in his role as a principal in the conspiracy charged against him, used couriers to deliver cocaine mainly from south Florida to North Carolina. He had a number of co-conspirators who were likewise indicted in connection with this conspiracy, and several of those co-conspirators, under various plea agreements, testified against Christy. Without more, it is sufficient to say that the Joint Appendix reveals that the testimony of these co-conspirators clearly established Christy as the major figure in a long-term multi-kilogram cocaine distribution system. Although there are minor discrepancies within the testimony provided by the various co-conspirators, there is no essential controversy concerning the role that Christy played in the conspiracy. Indeed, since the defense presented no evidence in trial, exculpatory or otherwise, the jury had no significant fact controversy to consider.[1]
 
 I.
 
 3
 Christy's first assertion of error is that the district court incorrectly applied the 1987 Sentencing Guidelines in his sentencing. The evidence reveals that Christy began taking a somewhat lesser role in the activities of the conspiracy in 1987. The record discloses that Christy decreased his participation in 1987 due to the scrutiny that was increasingly being paid to his activities by the Federal Bureau of Investigation.
 
 
 4
 Nonetheless, the record plainly shows that he paid to Anna Barnes, one of his principal co-conspirators, the sum of $500 in late December of 1988. This date is significant because it occurred after the commencement of the operation of the Sentencing Guidelines on November 1, 1987. Mrs. Barnes described this as her last monetary transaction with Christy. She did not testify as to the reason for the payment, but no evidence was developed to show that the payment was in any way different from previous payments made by Christy, or at his direction, to Mrs. Barnes for various drug transactions. Over the course of the conspiracy, the evidence clearly shows that Mrs. Barnes and her husband received over $50,000 and shared the proceeds of various drug transactions with Christy on some eight occasions.
 
 
 5
 As a result, the court below could very well have drawn the conclusion that Christy's participation in the conspiracy continued at least until late December 1988, and where the participation of a co-conspirator in a conspiracy which extends past November 1, 1987, is shown, the Sentencing Guidelines apply to determine the appropriate sentence to be imposed. See United States v. White, 869 F.2d 822 (5th Cir.1989); United States v. Lee, 886 F.2d 98, 103 (8th Cir.1989).
 
 
 6
 Christy argues that he withdrew from the conspiracy before November 1, 1987. However, the evidence of his payment to Mrs. Barnes in late December 1988 is unrefuted in the record and provides a proper base for the conclusion that he had not withdrawn from the conspiracy before the Sentencing Guidelines' operative date. On the evidence adduced in the record, the district court was clearly correct in applying the Sentencing Guidelines to determine Christy's sentence.
 
 II.
 
 7
 Christy's second assertion of error is that the district court improperly admitted evidence concerning his 1984 drug-related activities in Florida, culminating in his arrest there, in violation of his fifth and sixth amendment rights. The evidence in question related to the testimony of Deputy Sheriff Collins of West Palm Beach who had, as part of an undercover law enforcement operation, posed as the owner of an airfield and negotiated with a group of people who wanted to rent the airfield to bring in a planeload of cocaine from South America. Collins, however, refused to agree to the rental of his airstrip unless some arrangement could be made for the disposal of several kilograms of cocaine which he purportedly owned. Christy was put in touch with Collins and negotiated to purchase the cocaine. In the culmination of those negotiations, Christy tendered to Collins $110,000 for the cocaine. He was forthwith arrested, and law enforcement officials seized the cocaine and the $110,000.
 
 
 8
 Christy contended that the attempted purchase of the several kilograms of cocaine was, in fact, part of a separate, unrelated conspiracy to bring in the planeload of cocaine from South America. The court below heard full argument on the matter and carefully limited the introduction of evidence relating to this to the actual negotiations themselves, excluding all references to Christy's arrest in Florida, his conviction of attempting to possess with intent to distribute, etc. The only evidence that went to the jury on this issue related to the negotiations between Collins and Christy. There was no evidence to indicate that Christy was in any way engaged in the plan to import the planeload of cocaine. There was no evidence, in fact, that Christy had any knowledge of the efforts by others to use the airfield for importation of cocaine. Christy's activity arose only when he was put in touch with Collins as someone who had cocaine to sell.
 
 
 9
 In the proceedings below, the court ruled that the evidence of the negotiations in this transaction showed an effort by Christy to buy cocaine, and although the evidence did not disclose clearly an intent to ship the cocaine to North Carolina, a reasonable inference could be drawn, considering Christy's past shipments into North Carolina, that his purpose in purchasing the several kilograms would have been to do exactly the same thing, namely, to obtain it for his distributors in North Carolina. The appellant's brief does not address in any detail the asserted violation of fifth and sixth amendment rights, and this court perceives no such violation, under the facts presented by the Joint Appendix.
 
 III.
 
 10
 In his third assignment of error, Christy argues that the district court failed to suppress the results of certain electronic surveillance that was conducted in violation of his fourth amendment right against unreasonable searches and seizures. Specifically, he maintains that the court order granting to the government authority to conduct electronic surveillance was improper under 18 U.S.C. Sec. 2518(1)(c) (1970) and, therefore, led to an infringement of his constitutional rights.
 
 
 11
 Section 2518(1)(c) provides that "a full and complete statement as to whether or not other investigative procedures have been tried and failed or whether they reasonably appear to be unlikely to succeed if tried or to be too dangerous" must be contained in any application and affidavit for a search warrant. Christy challenges both the original affidavit and application in this case, dated October 23, 1986, and the affidavit and application supporting a successful effort to obtain an extension of the order, made on December 26, 1986. In his estimation, neither met the requirement of 18 U.S.C. Sec. 2518(1)(c).
 
 
 12
 Actually, however, the court considering the application for the electronic surveillance made a written order in which it found that the affidavit supported a conclusion that several normal investigative techniques had been utilized unsuccessfully before the application for surveillance was made. The order further indicated that the application and the affidavit were sufficiently detailed to meet the requirements of 18 U.S.C. Sec. 2518(1)(c).
 
 
 13
 Christy contends that the affidavits, in particular, are entirely matters of conclusory statements made by the agent who prepared the affidavits, and that such conclusory allegations cannot sustain a surveillance order. Even a cursory inspection of the lengthy affidavits, however, indicates that, while there are some conclusory allegations in the affidavits, they are not numerous. Most of the statements contained in the affidavits are factual recitations of what efforts had been undertaken coupled with an acknowledgement that they had not been successful in determining what activities were taking place in the areas targeted for surveillance.
 
 
 14
 After considering these matters, and particularly after reviewing the respective applications and affidavits, the court below concluded that the evidence should be admitted. The record before us shows no basis for concluding that this ruling was incorrect.
 
 IV.
 
 15
 In his final assignment of error, Christy asserts that the district court erred by failing to depart downward under the Sentencing Guidelines in order to "equalize" or to render his sentence less "disproportionate" to that of the other co-conspirators.
 
 
 16
 The answer to this question is shortly stated. At the time Christy's initial brief in this case was prepared, the Court of Appeals for the Fourth Circuit had not yet ruled on the issue of whether it had jurisdiction to consider an appeal of a sentence imposed within the Guidelines, where the sentencing court had refused to depart downward from the range provided by the Guidelines. It has now done so in United States v. Bayerle, 898 F.2d 28 (4th Cir.1990), decided on March 9, 1990.[2]
 
 
 17
 In the Bayerle case, the criminal defendant contended that the district court should have departed downward from the Guidelines range because he believed that the court should have found that there existed "an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission ... that should result in a sentence different from that described." Id. at 30. Upon considering the asserted error in Bayerle, this court joined seven other circuits which have decided that refusals to depart downward from the Guidelines range are generally not appealable. See id. The Bayerle opinion notes that the law does provide for review of a sentence "imposed in violation of law," see United States v. France, 886 F.2d 973 (7th Cir.1989), and cites as an example a belief by the sentencing judge that he had no authority to depart downward.
 
 
 18
 In the present case, nothing shows that the sentence imposed was "in violation of law." The court below clearly evidenced full knowledge of its ability to depart downward in proper circumstances. Finding no "violation of law" by the court below in the application of the Guidelines, the conclusion is inescapable under the rationale of Bayerle that this court does not have jurisdiction to consider the appeal on this point in this case.
 
 
 19
 For the reasons indicated, the judgment of the court below is
 
 
 20
 AFFIRMED.
 
 
 
 [1]
 While the foregoing factual discussion is sketchy, it is sufficient for the purposes of this opinion, as the facts may be amplified from time to time in the discussion of the four issues on appeal
 
 
 [2]
 While the government's brief is dated March 23, 1990, and Christy's closing brief is dated May 23, 1990, Bayerle was not cited in either, apparently not having come to the attention of counsel in that brief time. In a letter dated June 7, 1990, the United States Attorney brought the case to the attention of the court