United States Court of Appeals,
Fifth Circuit.

No. 92-1920.

FEDERAL DEPOSIT INSURANCE CORPORATION in its Corporate Capacity as Liquidator of
Bank of Dallas, Plaintiff-Appellee,

v.

ROYAL PARK NO. 14, LTD., et al., Defendants-Appellants.

Sept. 29, 1993.

Appeal from the United States District Court for the Northern District of Texas.

Before EMILIO M. GARZA, and DeMOSS, Circuit Judges, and ZAGEL[*], District Judge.

DeMOSS, Circuit Judge:

I.

On November 1, 1985, Royal Park No. 14, Ltd., Royal Park No. 20, Ltd., Royal Park

Development Corporation, Inc., G.R. Hay and William G. Jones, Jr. (Royal Park) executed and

delivered a promissory note to the Bank of Dallas. Hay and Jones also executed and delivered a

guaranty agreement under which they guaranteed payment of the original note and any extensions and

renewals. The note was secured by a deed of trust.

Royal Park borrowed the money from the Bank of Dallas to construct a building that it

planned to lease. Royal Park claims that the Bank of Dallas did not fund the entire $3,000,000 at loan

origination. Instead, Royal Park was to draw on the $3,000,000 amount to pay for construction and

tenant finish-out as completed.

During the time period of construction and finding tenants for the building, Royal Park says

that it invested $600,000 of its own money into the building project. The note was extended and

renewed on November 17, 1987. The Bank of Dallas failed in February, 1988 and the FDIC took

over its obligations. Robert Meador, a FDIC vice-president, was in charge of servicing the renewal

note. In April 1988, Meador met with Hay and Jones, concerning reworking the renewal note. Hay

[*]District Judge of the Northern District of Illinois, sitting by designation.

and Jones requested the FDIC to fund an additional $600,000—$700,000 on the $3,000,000 note, for the purpose of providing tenant finish-out. The additional $600,000—$700,000 was part of the original and renewed amounts that were to be funded by the Bank of Dallas. Royal Park claims that Meador refused to fund the additional money but told Hay and Jones that if they worked toward securing leases for the building wherein the tenants provided their own finish-out, the FDIC would execute a non-disturbance agreement concerning the building leases and discount the renewal note and guaranty obligations to $1,000,000. Royal Park claims that the agreement required Royal Park to secure leases for the building before December 31 at fair market value or above in the approximate same area.

Hay and Jones secured two leases that met all of the requirements under the agreement with Meador so that the FDIC would execute the non-disturbance agreement, and discount the renewal note and guaranty obligations to $1,000,000. However, Royal Park contends, the FDIC refused to perform its obligations under the agreement. Royal Park claims that, relying upon Meador's promises, Hays and Jones worked many hours over a five month period to fulfill their part of the agreement.

The FDIC posted the building for foreclosure, filed notice of foreclosure and served Jones and Hays with notice of foreclosure on January 17, 1989. A certified copy of the notice of sale was mailed to Royal Park pursuant to § 51.002 of the Texas Property Code. A foreclosure sale was conducted by FDIC on the building on February 7, 1989; and the foreclosure bid price was $760,000, which Royal Park claims was substantially less than the value would have been if the building had been leased pursuant to the leases obtained by Royal Park.

Royal Park claims that the reason the renewal note could not be paid was because the FDIC refused to fund the additional monies on the renewal note to be used for tenant finish-out and therefore no income could be received from the project. Royal Park contends that it has suffered injury because it expended substantial effort to secure leases, has been deprived of having the renewal note and guaranty obligation discounted by $1,000,000, and has been deprived of the building's market value increase and the ability to recapitalize the building transaction such that Royal Park would recover its $600,000 cash investment because the FDIC did not comply with its promises.

On May 18, 1992, FDIC filed action seeking a deficiency judgment and moved for summary judgment on July 6, 1992. Royal Park argued that the motion should be denied because FDIC is estopped under the theory of promissory estoppel, Royal Park was not given sufficient notice of the foreclosure sale under Texas law and FDIC was charging a usurious interest rate.[1]

On September 28, 1992, the district court granted summary judgment for FDIC in the amount of $2,049,296.97 for the outstanding balance on the note of the unpaid principal, plus accrued but unpaid interest in the amount of $865,483.39 as of July 28, 1992, 800 F.Supp. 477.

On appeal, Royal Park contends that the district court erred in holding that FDIC complied with § 51.002(b) of the Texas Property Code in conducting a foreclosure and in holding that Royal Park's estoppel defense had no merit. Royal Park also moved this Court for certification of the § 51.002 state law question to the Supreme Court of Texas under Rule 114 of Tex.R.App.P. and for a stay pending the supreme court's decision.[2]

We AFFIRM.

## II.

### WHETHER THE DISTRICT COURT CORRECTLY HELD THAT FDIC COMPLIED WITH § 51.002(b) OF THE TEXAS PROPERTY CODE IN CONDUCTING A FORECLOSURE.

Section 51.002 of the Texas Property Code requires that notice of foreclosure be given *at least* 21 days before the date of sale of property. It states in relevant part:

(b) Notice of the sale must be given at least 21 days before the date of the sale:

(1) by posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property will be sold;

(2) by filing in the office of the county clerk of each county in which the property is located a copy of the notice posted under Subdivision (1); and

(3) by holder of the debt to which the power of sale is related serving written notice

---

[1]The court held that the doctrine of sovereign immunity barred Royal Park's claim that the interest charged was usurious. Royal Park does not appeal this portion of the district court's order granting summary judgment.

[2]This Rule provides that the Supreme Court of Texas may in its discretion answer questions of state law when the question is certified to it by this Court. The FDIC filed an opposition to this motion. This Court initially ordered the motion for certification and for stay be carried with the case.

of the sale by certified mail on each debtor who, according to the records of the holder of the debt, is obligated to pay the debt.

The foreclosure notice in this case was posted, filed and served on January 17, 1989. The actual foreclosure sale occurred on February 7, 1989. Royal Park contends that the language of the statute requires that the posting, the filing and the mailing of the notice of foreclosure be at least 21 complete days prior to sale, excluding both the day of notice and the day of sale. Royal Park argues that because the FDIC waited until January 17, to post the notice, either the date of posting or the date of sale would have to be included in the computation of time to conclude that the FDIC's notice complied with the statute. It argues that neither of those days should have been included. Because the date of notice cannot be counted in the twenty-one day waiting period, it claims, FDIC gave only twenty-days notice and thus did not comply with the statute.

Royal Park claims that there are Texas cases and statutes that support its contentions that the "at least" language excludes the day before and the day after the specified period of time. *See O'Connor v. Towns,* 1 Tex 107, 114 (1846); *Williams v. City of Angleton,* 724 S.W.2d 414, 417 (Tex.App.—Houston [1st Dist.] 1987, no writ); *Pollard v. Snodgrass,* 203 S.W.2d 641 (Tex.Civ.App.—Amarillo 1947, writ dism'd); *Terry Johns Automobiles, Inc. v. State,* 721 S.W.2d 488, 489 (Tex.App.—Corpus Christi, 1986, no writ); *Wagner v. Urban,* 170 S.W.2d 270, 272 (Tex.Civ.App.—Amarillo 1943, no writ); TEX.R.CIV.P. 166(a), (c); TEX.R.CIV.P. 4; and TEX.R.CIV.P. 21. Moreover, Royal Park says, the Texas Supreme Court granted writ of error to specifically construe the *at least* language of § 51.002 in *Bryant v. Texas American Bank-Levelland,* 795 S.W.2d 915 (Tex.1990), suggesting that the language provision in that section is confusing and the statute should be interpreted.[3]

In summary, Royal Park claims that because the notices were not given for the required period of time, the foreclosure was not valid, the FDIC cannot recover a deficiency judgment and defendants are entitled to substantial monetary offsets, *Carruth Mortgage Corp. v. Ford,* 630 S.W.2d 897, 899 (Tex.App. Houston, 1st Dist.1982, no writ), *Tarrant Savings Assoc. v. Lucky Homes, Inc.,* 390

---

[3]The parties in that action reached a settlement and the case was dismissed by agreement and therefore the issue has not been decided by the Texas Supreme Court.

S.W.2d 473, 475 (Tex.1965); and the entitlement to offsets also creates a fact issue which precludes summary judgment.

Royal Park's argument fails. The law in Texas is that when a statute requires that notice be given by certified mail, as does § 51.002(b) and former article 3810, the date of mailing is considered the date of notice. *Valley v. Patterson,* 614 S.W.2d 867 at 871 (Tex.Civ.App.1981). The date of notice when given by certified mail is controlled by the mailing date, and not the date on which the letter was received. *Id.*

The language in § 51.002(b), which provides for "at least 21 days before the date of sale", is identical to its predecessor statute, Article 3810. Had the legislation intended to change the language in Article 3810 when it created § 51.002(b), it would have provided the necessary comments and discussion in the newly created statute that would have clarified that a change had indeed occurred. All Texas courts that construed this nearly identical language have held that only the date of sale was excluded in calculating the notice period—not the date of notice. *Newman v. Woodhaven Nat'l Bank,* 762 S.W.2d 374 (Tex.Civ.App.1981).

The proper method for computing the 21 day period in Texas therefore is to exclude the date of sale, then count backwards 21 days to determine the latest date notice of the foreclosure sale may be given. Here, counting backward 21 days beginning with February 6, 1989, (thus excluding February 7, 1989, the date of the sale), the latest date proper notice of foreclosure could be given was January 17, 1989; and that date is the undisputed date notice of the foreclosure was given. Because the date of posting may be counted in determining the 21 day notice period, the foreclosure sale was held in accordance with § 51.002 of the Texas Property Code.

The Texas cases, statutes and judicial rules of procedure cited by Royal Park wherein the days apparently are counted differently have no application to Texas law concerning notice of a foreclosure sale. Nor do they demonstrate that there is any confusion under Texas law on this issue. Furthermore, Royal Park's argument that the granting of a writ of error in *Bryant v. Texas American Bank-Levelland* by the Supreme Court of Texas meant the court intended to construe the *at least* language of § 51.002 has no merit. The mere granting of the writ by the Texas Supreme Court is of

no precedential value, nor is it a persuasive indicator that Royal Park's position would ultimately have prevailed in that case.

III.

WHETHER THE DISTRICT COURT ERRED IN HOLDING THAT ROYAL PARK'S ESTOPPEL DEFENSE HAD NO MERIT.

Promissory Estoppel is an affirmative defense in Texas to suits for the collection of indebtedness. The required elements of proof are 1) a promise, 2) foreseeability of reliance thereon by the promisor, and 3) substantial reliance by the promisee to his detriment. *English v. Fischer,* 660 S.W.2d 521, 524 (Tx.1983).

Royal Park argues that when the FDIC acted in its corporate capacity as receiver, as it did here, its liability must be determined in the same fashion as that of a private party and is subject to the defense of promissory estoppel." *Federal Deposit Insurance Corporation v. Harrison,* 735 F.2d 408, 412 (11th Cir.1984) and *Santoni v. Federal Deposit Insurance Corp.,* 677 F.2d 174, 178 (1st Cir.1982). Royal Park contends that it produced summary judgment proof of each of the promissory estoppel elements and the FDIC has not established any defense to promissory estoppel and therefore there are fact issues concerning their promissory estoppel defense.

The district court, however, held that Royal Park's estoppel defense failed because the alleged misrepresentations of the FDIC official were unauthorized. *FDIC v. Spain,* 796 F.Supp. 241, 245 (W.D.Tex.1992). It concluded that Royal Park's assertion of promissory estoppel was inappropriate because Texas courts have held that the Credit Committee of the FDIC is the only body which has authority to renegotiate or settle a loan. The district court found that Meador, as a liquidation assistant for FDIC, acted beyond the scope of his authority in making oral representations regarding Defendants' loan renegotiation.

The district court also found that Royal Park's estoppel defense failed to "show that their reliance on the vice president's representations was reasonable," because "[i]t has long been held that erroneous oral representations from a government agent, without more, are insufficient to prove the element of reasonable reliance. *Heckler v. Community Health Services of Crawford County,* 467 U.S. 51, 65-66, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984); *Duthu v. Sullivan,* 886 F.2d 97, 99 (5th

Cir.1989), *cert. denied,* 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990); *Jones v. Dept. of Health & Human Services,* 843 F.2d 851, 853 (5th Cir.1988).

On appeal, Royal Park first argues that the court's holding is defective because the FDIC did not plead that the alleged misrepresentations were unauthorized as required by Fed.R.Civ.P. 8. Rule 8 addresses the pleading requirements for affirmative claims and the pleading requirements for responses to claims or counterclaims. Estoppel is not part of the FDIC's affirmative case against Royal Park, and Royal Park did not assert its estoppel defense by way of counterclaim. Thus, Rule 8 did not require the FDIC to assert that Meador's alleged misrepresentations were unauthorized.

Additionally, because the estoppel is not part of the FDIC's case, the FDIC's motion for summary judgment did not address whether Meador's alleged misrepresentations were authorized. After Royal Park raised the issue of estoppel in opposing the motion for summary judgment, the FDIC appropriately responded to it in its reply brief.

Royal Park next argues that the court erroneously relied upon cases that concerned statements that were misrepresentations about the law in arriving at its decision in this issue. The court, it says, should have recognized that here the alleged misrepresentation was factual.

Royal Park's argument has no merit. "[A] private individual asserting estoppel against the government has a very heavy burden to bear" *Jones,* 843 F.2d at 853. Accordingly, the reliance upon oral representations of government officials is unreasonable as a matter of law regardless of whether the representation is of fact or law.

IV.

CONCLUSION

We AFFIRM the district court's findings and DENY the appellant's motion for certification of the § 51.002 state law question to the Supreme Court of Texas.