**FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver for United Bank of Texas, Plaintiff,**

v.

**Jerry SPAIN and Patricia Spain, d/b/a American Engraving, Etc. Defendants.**

**No. A–91–CA–530.**

United States District Court, W.D. Texas, Austin Division.

April 2, 1992.

Richard Anderson, Roy G. Morris, F.D.I.C. Legal Dept., Dallas, Tex., for plaintiff.

William W. Rittenhouse, Austin, Tex., for defendant.

## ORDER

SPARKS, District Judge.

BE IT REMEMBERED on the 16 day of March, 1992, came on to be heard and considered the above styled and numbered cause, and the Plaintiff appeared by its authorized representative and by and through counsel and the Defendants appeared in person and by and through their counsel of record, and the parties having announced ready for trial, having waived their right to a jury trial, and thereafter presented their evidence, arguments and stipulations, and after due consideration of same, the Court enters the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1) On September 22, 1986, Jerry Spain and Patricia Spain d/b/a American Engraving, Etc., Defendants, executed a promissory note (note) payable to United Bank of Texas (United Bank) in the amount of $72,200.00. The note required monthly payments of $1,015.09 beginning October 22, 1986, and a final payment of all remaining unpaid principal and accrued interest on September 22, 1987. Defendants intended to refinance the note at maturity. The note was secured by a security agreement dated September 22, 1986, granting United Bank a security interest in certain collateral, including raw materials, inventory, accounts, chattel paper, fixtures, equipment and a life insurance policy.

2) Defendants made timely monthly payments of $1,015.09 as required by the note.

3) On June 4, 1987, United Bank went into receivership of the Federal Insurance Depository Insurance (FDIC). Defendants' promissory note and security agreement were among the assets placed into the receivership.

4) On June 6, 1987, FDIC sent Defendants a certified letter notifying them of United Bank's insolvency and that FDIC had been appointed receiver, and instructing them to adhere to the original terms of

the note and make payments to FDIC. Defendants followed these instructions.

5) On July 30, 1987, Jack Hunt, a liquidation assistant with FDIC, wrote Defendants, giving them the same information contained in the June 6, 1987, letter.

6) On September 22, 1987, the note matured and FDIC sent Defendants a letter notifying them of this and requesting they contact FDIC to arrange for prompt payment of the amount due.

7) Defendants contacted Hunt four times. Each time, Defendants notified him that they could not pay the balance due and requested refinancing. During the last conversation, July 1988, Hunt advised Defendants an agreement may be worked out and he would get back with them.

8) From September 1987 through July 1988, after maturity, Defendants continued making $1,015.09 monthly payments to FDIC. After July 1988, relying on the Hunt's comments, they stopped making monthly payments and paid periodically. They stopped making payments all together in March 1990.

9) In August 1989, Defendants note was assigned to David Savage, another FDIC liquidation assistant. Defendants contacted Savage numerous times regarding refinancing or settling their note. Savage requested that Defendants send him their financial statement, their tax returns for the last three years, and a settlement offer. Defendants did this four separate times, but Savage failed to respond. Defendants have also made settlement offers since FDIC filed this suit, but FDIC has not responded.

10) Defendants have attempted to secure refinancing from other sources, but have been unsuccessful.

11) FDIC Liquidation assistants do not have authority to renegotiate or settle loans. Their only authority, with regard to renegotiating or settling, is to receive financial statements, tax returns and settlement offers from debtors seeking to renegotiate, and if they feel the settlement offer is favorable for the FDIC, refer it to the Credit Committee. The Credit Committee is the only body with authority to renegotiate or settle a loan. Neither Savage nor Hunt informed Defendants of this fact.

12) Defendants do not contest the validity of the note or that the note is in default. They contend FDIC is barred by the doctrine of laches, has waived its rights to demand full payment on the note, or is estopped from demanding full payment.

13) FDIC filed suit on July 1, 1991, over 22 months after Defendants went into default.

## CONCLUSIONS OF LAW

### LACHES

██ Defendants contend this suit is barred by laches. Laches is an affirmative defense that must be considered in light of the facts of each case. A defendant raising laches must plead and prove an unreasonable delay in bringing a claim and detrimental good faith change of position because of the delay. *Clark v. Amoco Production Co.*, 794 F.2d 967, 971 (5th Cir. 1986). Laches may not be asserted against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest. *United States v. Popovich*, 820 F.2d 134, 137 (5th Cir.1987); *cert. denied*, 484 U.S. 976, 108 S.Ct. 487, 98 L.Ed.2d 485 (1987). However, it is unnecessary for the Court to decide whether FDIC is acting in this capacity, because Laches is also unavailable when there is an applicable statute of limitations period. *Clark v. Amoco Production Co.*, 794 F.2d at 972. Texas law provides a 4 year statute of limitations period for a party to sue on a debt. TEX.CIV.PRAC. & REM.CODE ANN. § 16.004 (West 1986). This period has not expired. Even assuming that FDIC was not acting in its sovereign capacity to enforce a public right or protect the public interest, there is an applicable statute of limitations period in this case, so laches is unavailable.

### WAIVER

██ Defendants insist FDIC has waived its right to demand full payment of the principal and interest due. Waiver re-

sults when a party knows, constructively or actually, a right exists, and either intentionally waives the right or takes action that is inconsistent with asserting the right. *Pitts by and through Pitts v. American Security Life Insurance Company*, 931 F.2d 351, 357 (5th Cir.1991), *petition for cert. filed*, 60 U.S.L.W. —— (U.S. Jan. 22, 1992) (No. 91–1286); *First Interstate Bank of Arizona v. Interfund Corporation*, 924 F.2d 588, 595 (5th Cir.1991). Generally, waiver is a fact question turning on the intent of the party holding the right. The fact finder must examine the acts, words or conduct of the party to determine if there is an unequivocal intention to relinquish the right. *First Interstate Bank of Arizona v. Interfund Corporation*, 924 F.2d at 595.

■ Examining the facts in this case, the Court finds that FDIC did not exhibit an unequivocal intention to relinquish its rights against Defendants. It is true, FDIC accepted the monthly payments from Defendants after default at a time when it could have demanded full payment. Furthermore, it is true that Hunt stated to Defendants that they should not worry about the monthly payments and refinancing could be available. However, neither Hunt nor Savage had authority to refinance the loan or accept a settlement offer. Thus, any statements made in this regard were without authority. Furthermore, Hunt and Savage encouraged Defendants to seek alternate financing to pay the principal and interest due on the note. Finally, and most importantly, even if Hunt told Defendants not to worry about the monthly payments, this cannot be considered a waiver of FDIC's rights, because after default, FDIC no longer had the right to monthly payments and only had a right to immediate full payment. These facts do not warrant a finding that FDIC unequivocally waived its rights. Consequently, there is no waiver in this case.

## ESTOPPEL

■ Defendants also insist FDIC is estopped from asserting its rights against them. Successfully asserting estoppel against the government or a government entity is a difficult task. It requires that the party establish at least the traditional elements of estoppel. *Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. 51, 60, 104 S.Ct. 2218, 2222, 81 L.Ed.2d 42 (1984). The traditional elements of estoppel are:

1) the party to be estopped made a definite misrepresentation to the party asserting estoppel;

2) the party to be estopped was aware of the facts;

3) the party to be estopped intended the party asserting estoppel act on its misrepresentation or had reason to believe the party asserting estoppel would act on its misrepresentation;

4) the party asserting estoppel neither had knowledge nor reason to know of the facts; and

5) the party asserting estoppel reasonably relied on the misrepresentation to its detriment.

*Heckler v. Community Health Services of Crawford County, Inc.*, 467 U.S. at 59, 104 S.Ct. at 2223; *Mangaroo v. Nelson*, 864 F.2d 1202, 1204 (5th Cir.1989). As the Fifth Circuit stated in *Jones v. Department of Health & Human Services*, 843 F.2d 851, 853 (5th Cir.1988): "A private individual asserting estoppel against the government has a very heavy burden to bear." Exactly what facts must exist before the "heavy burden" is met is uncertain. However, it is certain that erroneous oral representations from a government agent, without more, are insufficient, because relying on oral representations is unreasonable. Thus, if reliance is based on oral representations, the party fails to establish the traditional elements of estoppel. *Heckler v. Community Health Services of Crawford County*, 467 U.S. at 65–66, 104 S.Ct. at 2226–2227; *Duthu v. Sullivan*, 886 F.2d 97, 99 (5th Cir.1989), *cert. denied*, 496 U.S. 936, 110 S.Ct. 3213, 110 L.Ed.2d 661 (1990); *Jones v. Department of Health & Human Services*, 843 F.2d at 853.

■ Defendants cite *Federal Deposit Insurance Corporation v. Harrison*, 735 F.2d 408 (11th Cir.1984), to support their

position. In *Harrison,* the FDIC was acting in its capacity as receiver of a failed bank. The 11th Circuit stated that when the FDIC acts in this capacity and seeks to enforce guaranty agreements, it is acting in its proprietary capacity. When the FDIC acts in its proprietary capacity and its agents act within their scope of authority, a party may estop the FDIC and the government by establishing the traditional elements of estoppel.[1] *Id.* at 411. The 11th Circuit found that the defendants established the elements of estoppel and allowed them to assert estoppel against the FDIC based on oral representations from FDIC agents. While at first glance this case appears to support Defendants' position, on closer examination any support disappears. The court stated, "... we note that FDIC does not claim that the representations of its agents were authorized or contrary to statute or regulation. Thus, cases involving representations of government officers that was beyond the scope of their scope of authority are distinguishable." *Id.,* at 413. In the present case, FDIC insists that agents Savage and Hunt were acting beyond the scope of their authority as only the Credit Committee had authority to renegotiate a loan or accept a settlement. Thus, even if the Court accepted the First Circuit's proprietary/sovereign distinction, the present case does not fall within the proprietary exception.

This is in line with Supreme Court decisions. The Supreme Court does not make a distinction between government actions in its proprietary or sovereign capacity when a party asserts estoppel against the government. *Federal Crop Insurance Corporation v. Merrill,* 332 U.S. 380, 383–384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). The Supreme Court applies the bright line rule: if the government agent acts beyond the scope of his authority, a party cannot assert estoppel against the government. *Id.; Sangre De Christo Development Company, Inc. v. United States,* 932 F.2d 891, 895 (10th Cir.1991); *Federal Deposit Insurance Corporation v. Roldan Fonseca,* 795 F.2d at 1108; *Phelps v. Federal Emergency Management Agency,* 785 F.2d 13, 17 (1st Cir.1986). While it appears the Supreme Court would have reached the same conclusion as the Eleventh Circuit, the Supreme Court would not have drawn the proprietary/sovereign distinction.

The Court must first find the traditional elements of estoppel are present before it can even consider whether estoppel can be successfully asserted against FDIC. One element is that reliance was reasonable. In the present case, Defendants relied on oral representations from FDIC agents. Reliance on oral representations is not reasonable. Thus, Defendants may not assert estoppel against FDIC.

The Court must state, however, the fair disposition in this cause would be for FDIC to refinance the note, but the Court is without jurisdiction to enforce this action and must enter judgment for FDIC.[2]

## FINAL JUDGMENT

BE IT REMEMBERED on the 16 day of March, 1992, came on to be heard and considered the above styled and numbered cause, and the Plaintiffs appeared by its authorized representative and by and through counsel and the Defendants appeared in person and by and through their counsel of record, and the parties having announced ready for trial, having waived their right to a jury trial, and thereafter presented their evidence, arguments and stipulations, and the Court thereafter hav-

---

1. The First Circuit expressly disagrees with the Eleventh Circuit's opinion.

   ... we expressly rejected the proposition that the sovereign/proprietary distinction justifies treating a government agency as a private party for estoppel purposes, because the Supreme Court has 'found no merit in this distinction.' Thus, we disagree with the Eleventh Circuit's conclusion that proprietary functions performed by corporate FDIC justi-

   fy the assertion of equitable estoppel claims against it. (citations omitted)
   *Federal Deposit Insurance Corporation v. Roldan Fonseca,* 795 F.2d 1102, 1109 (1st Cir.1986).

2. The Court, from the evidence, cannot determine the unpaid principal as of January 13, 1992, and therefore, cannot determine any daily rate of interest and must therefore use the statutory current rate of interest for judgment which is 4.85%.

ing made findings of fact and conclusions of law filed in this cause, enters the following judgment:

IT IS ORDERED, JUDGED, AND DECREED that the Federal Deposit Insurance Corporation recover $92,780.60 from Defendants Jerry Spain and Patricia Spain, d/b/a American Engraving, Inc., jointly and severally, on the note dated September 22, 1986 through January 13, 1992 with interest thereafter at 4.85% per annum on the unpaid principal as of January 13, 1992.

IT IS FURTHER ORDERED, JUDGED, AND DECREED that the Federal Deposit Insurance Corporation recover $3,000.00 in attorney fees from Defendants Jerry Spain and Patricia Spain, d/b/a American Engraving, Inc.

IT IS FURTHER ORDERED, JUDGED, AND DECREED that court costs and expenses be taxed to Defendants.