The **FEDERAL DEPOSIT INSURANCE CORPORATION, in its capacity as Receiver of Mountain Ridge State Bank, Plaintiff,**

v.

**Leo Everett WHITE, et al., Defendants.**

**Civ. A. No. 92–4662 (HLS).**

United States District Court,
D. New Jersey.

July 29, 1993.

**306**

Susan L. Hall, Williams, Caliri, Miller & Otley, Wayne, NJ, for plaintiff F.D.I.C.

Gerald Krovatin, Lowenstein, Sandler, Kohl, Fisher & Boylan, Roseland, NJ, for defendants Carlesimo, Neumann, Glucksman, Grant, Rosen and Serra.

Michael F. Marino, Stein, Bliablias, McGuire, Pantages & Gigi, Livingston, NJ, for defendant White.

Alphonse T. Crescenzo, Glen Rock, NJ, for defendant Irish.

Edward N. Fitzpatrick, Clapp & Eisenberg, Newark, NJ, for defendant Schaffer.

Peter B. Bennet, Picco Mack Herbert Kennedy Jaffe & Yoskin, Trenton, NJ, for defendant Hildebrandt.

George B. Henkel, Soriano, Henkel, Biehl, Matthews & Marinello, Bloomfield, NJ, for defendant Salvatore.

Michael Ascher, Einhorn, Harris, Ascher & Barbarito, Denville, NJ, for defendant Franklin.

Harvey Weissbard, Weissbard & Wiewiorka, West Orange, NJ, for defendant Freund.

Peter V. Ryan, West Orange, NJ, for defendant Reddin.

## OPINION

SAROKIN, District Judge.

Before the court is plaintiff's motion to strike most of the affirmative defenses asserted by the defendants to this action, including their defenses that the plaintiff has contributed to the losses at issue and that the plaintiff has failed to mitigate damages.

*Introduction*

Aspects of the motion pending before the court raise fundamental questions regarding the duties and responsibilities of government agencies with respect to failed banking institutions. Specifically, plaintiff's motion to strike defendants' failure to mitigate and contributory negligence defenses places in issue whether the government's performance of its duties and responsibilities, or the lack thereof, affects the liability of persons being sued by such agencies for alleged misconduct.

The FDIC serves in a dual capacity with respect to financial institutions. It acts as a regulator of operating banks and frequently is appointed receiver for failed ones. The court has little difficulty in concluding that any alleged failures to supervise or to regulate by a government agency prior to the takeover of a failed financial institution cannot serve to relieve or to reduce the liability of any alleged wrongdoers. The defense that "the government should have caught and stopped us" is easily rejected.

However, once the government takes on the role of operator of the institution, conclusions based on assertions that the government did not carry out its duties properly are not quite so apparent. In a *perfect* world, the government would take over a failed financial institution and efficiently and expeditiously resolve its problems and restore its solvency or liquidate it so as to maximize the value of its assets and minimize its losses. In the *real* world, due to the large number of bank failures, the enormity of their problems and the lack of experienced governmental personnel to deal with those problems, the cure is frequently worse than the disease. Indeed, in many instances it appears that the taxpayers might have been better off leaving the alleged culprits in charge—leaving the foxes to guard the hen house—rather than having the government step in and increase rather than mitigate the losses.

By their answers, defendants have indicated that one of the issues in this case may be assigning responsibility for losses that have increased by reason of the government's neglect or inaction in its operation of the Bank. In other words, defendants answers raise the question of who is responsible when an asset worth a certain amount at the time of the government's takeover of the institution is later sold for significantly less than the takeover value, a loss that may be due solely to the agency's delay in acting?

In almost every instance in which courts have addressed this issue, it has been resolved in favor of the taxpayer and against the wrongdoer. Such a conclusion can be rationalized by virtue of the fact that the responsible (or irresponsible) bank officers

and directors have set the losses in motion and cannot have their liability excused or diminished because the government agency in charge is overworked or understaffed.

Here, in the choice between having a wrongdoer or the taxpayer absorb any additional losses, public policy dictates that the entirely innocent taxpayers should not suffer the burden, particularly where it is apparent that they have already contributed so much to the bail-out of those institutions where no or little recovery is available. In some particular instances, however, imposing added liability created by the neglect or inaction of *the government on those found to be wrong-doers may by unfair and onerous.* Nevertheless, as a general proposition, it is appropriate to fasten liability on those who have given birth to the problem rather than on those who have inherited it and must now correct it.

*Background*

On October 5, 1990, the Commissioner of the New Jersey Department of Banking declared the Mountain Ridge State Bank (the "Bank"), a banking institution chartered under the laws of the State of New Jersey, insolvent and closed it. Pursuant to 12 U.S.C. § 1821, the Federal Deposit Insurance Corporation (the "FDIC") was appointed as the liquidating receiver of the Bank with all the rights, obligations and powers provided by law. On November 9, 1992, the FDIC filed this lawsuit against the former directors and officers of the Bank,[1] asserting that defendants breached their fiduciary duties to the Bank and that they were negligent and grossly negligent in the discharge of their duties to the Bank. Plaintiff seeks compensatory damages, interest, costs of suit, attorneys' fees *and other relief the court* deems appropriate. By March 5, 1993, all of the defendants had filed answers to plaintiff's complaint.

*Discussion*

Plaintiff now moves to strike all but two of the affirmative defenses asserted by the various defendants[2] pursuant to Federal Rule of Civil Procedure 12(f), arguing that these defenses are insufficient as a matter of law.

Rule 12(f) provides, in relevant part, that "[u]pon motion made by a party ... the court may order stricken from the pleading any insufficient defense." Fed.R.Civ.P. 12(f). However, motions to strike affirmative defenses are generally disfavored because they require the court to evaluate legal issues before the factual background of a case has been developed through discovery. *See, e.g., Cipollone v. Liggett Group, Inc.,* 789 F.2d 181, 188 (3d Cir.1986); *United States v. 416.81 Acres of Land,* 514 F.2d 627, 631 (7th Cir.1975); *Glenside West Corp. v. Exxon Corp.,* 761 F.Supp. 1100, 1115 (D.N.J.1991). Thus, the United States Court of Appeals for the Third Circuit has stated that "a court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *Cipollone,* 789 F.2d at 188; *see also Glenside,* 761 F.Supp. at 1115 (noting that "a motion to strike will not be granted where the sufficiency of a defense depends on disputed issues of fact ... [nor] is [it] meant to afford an opportunity to determine disputed and substantial questions of law").

Although motions to strike are not favored, courts recognize that a motion to strike can save time and litigation expense by eliminating the need for discovery with regard to legally insufficient defenses. *See id.* at 1115 (and cases cited therein). Plaintiff maintains that this is precisely the type of case where striking the insufficient defenses will prevent "a flood of inquiry ... for which both the public and the defendants will pay dearly, in wasted litigation time and expense." Plt. Brief at 4. Defendants[3] assert that all of

---

1. The fourteen defendants are: Leo Everett White, Charles J. Irish, Marguerite M. Schaffer, William A. Hildebrandt, Carmen P. Salvatore, Vincent B. Carlesimo, Nic P. Neumann, Harold D. Glucksman, Frank A. Franklin, George R. Freund, Raymond Grant, Herbert I. Rosen, Robert Serra and Sharon Reddin.

2. Plaintiff does not move to strike the defenses asserting that it has failed to state a claim and failed to join indispensable parties.

3. Only defendants Carlesimo, Glucksman, Grant, Neumann, Rosen and Serra, who are jointly represented by the same counsel, have filed opposition to plaintiff's motion. All of the remaining defendants have merely joined in the brief sub-

their defenses are legally sufficient and therefore should not be stricken. In order to resolve this motion, the court will first set out briefly the defenses at issue and then consider their legal sufficiency.

Plaintiff asserts, and defendants do not dispute, that the affirmative defenses at issue fall into the following categories: 1) contributory negligence; 2) estoppel; 3) waiver; 4) ratification; 5) unclean hands; 6) collateral estoppel; 7) statute of limitations and laches; 8) failure to mitigate damages; 9) lack of proximate cause; 10) conclusory statements or denials; 11) lack of consideration; and, 12) reliance upon defenses asserted by other defendants. Because the court finds that this categorization encompasses all of the relevant defenses asserted by the various defendants, the court will turn to the legal sufficiency of these defenses beginning first with all of the defenses relating to action or inaction by the FDIC.

*A. Defenses Involving the FDIC's Actions*

At the outset of this discussion, the court notes, as stated above, that Congress has assigned the FDIC two distinct roles. The FDIC's primary function arises out of its obligation to insure "the deposits of all banks and savings associations which are entitled to the benefits of insurance," 12 U.S.C. § 1811, and is primarily regulatory in nature. *See id.* at § 1821(a). However, the FDIC also serves a second function, which is to act as a receiver or conservator of failed financial institutions. *Id.* at § 1821(c). As plaintiff notes, courts have carefully maintained a wall between the FDIC's two functions, holding that the actions of the FDIC as a regulator cannot form the basis for claims asserted

against the FDIC as receiver, and vice-versa. *See, e.g., FDIC v. Cheng,* 787 F.Supp. 625, 634 (N.D.Tex.1991); *FDIC v. Butcher,* 660 F.Supp. 1274, 1280 (E.D.Tenn.1987). With this framework in mind, the court turns now to the specific defenses asserted that are based on action or inaction by the FDIC.

### 1. Contributory Negligence

 The first affirmative defense at issue asserts that the FDIC's own negligence contributed to any losses sustained by the Bank and its shareholders. In support of its motion to strike this defense, plaintiff argues that "[a]ny assertion that the FDIC was negligent prior to the Bank's insolvency is insufficient as a matter of law."[4] Plt. Brief at 4. Plaintiff relies on *First State Bank v. United States,* 599 F.2d 558 (3d Cir.1979), *cert. denied,* 444 U.S. 1013, 100 S.Ct. 662, 62 L.Ed.2d 642 (1980), in which the United States Court of Appeals for the Third Circuit held that the FDIC owed no "duty to warn the Bank's board of the derelictions of their president and employees." *Id.* at 566. Plaintiff also cites numerous cases from other circuits and districts, in each of which the court has adopted this "no duty" rule.[5] *See* Plt. Brief at 5–7.

Behind the almost universal acceptance of the "no duty" rule, *see Resolution Trust Corp. v. Kerr,* 804 F.Supp. 1091, 1099 (W.D.Ark.1992) (noting that "[t]he no duty rule has gained acceptance in the various federal courts"), is the fact that:

'[N]othing could be more paradoxical or contrary to sound policy than to hold that it is the public which must bear the risk of errors of judgment made by its officials in

---

mitted by the above defendants. Because the opposition brief submitted does not address the sufficiency of all of the defenses that plaintiff moves to strike—no doubt because the opposing defendants did not assert these defenses—no opposition has been filed with respect to several of the defenses at issue.

**4.** Thus, plaintiff assumes that this contributory negligence defense is aimed at the FDIC's actions as regulator, not as receiver. Yet, this does not appear evident to the court upon review of the answers. However, as discussed *infra*, the FDIC owes no duty to defendants either in its capacity as regulator or as receiver. As such, it is irrelevant whether defendants' contributory

negligence is aimed at the FDIC's pre-takeover or post-takeover activities with regard to the Bank.

**5.** The court notes that the contributory negligence defense is one not discussed in the brief submitted to the court by the opposing defendants. As such, plaintiff's motion to strike this defense is unopposed. However, because whether this court decides to follow other federal courts and adopt the "no duty" rule is relevant to the court's discussion of plaintiff's motion to strike certain defenses that defendants have opposed, the court will address the duty issue.

attempting to save a failing institution—a risk that would never have been created but for defendants' wrong-doing in the first instance.'

*FDIC v. Baker*, 739 F.Supp. 1401, 1407 (C.D.Cal.1990) (quoting *FSLIC v. Roy*, No. 8–1227, 1988 WL 96570 (D.Md. June 12, 1988)). Considering the clear public policy at stake, courts have thus held that "no duty devolves onto the FDIC in favor of officers and directors of a failed banking institution *when the FDIC's role is either regulator or receiver of that institution.*" *Baker*, 739 F.Supp. at 1407 (emphasis added). As a result, courts have held that if an affirmative defense rests on the notion that the FDIC owes such a duty, that defense is insufficient as a matter of law. *See id.; Kerr*, 804 F.Supp. at 1099.

In light of the allegations at issue in this case, this court is also persuaded that the "no duty" rule is sound as a matter of public policy. If these defendants breached their fiduciary duties to the Bank and were negligent or grossly negligent in the discharge of their duties as the FDIC maintains, these defendants should not be able to shift the costs of their actions to the FDIC and, ultimately, to the taxpayers. As such, the court concludes that the FDIC owed no duty to these defendants in its capacity as regulator or as receiver of the Bank. Thus, defendants' contributory negligence defense must be stricken.[6]

### 2. Mitigation

▮ Plaintiff argues that the "no duty" rule also renders insufficient as a matter of law defendants' failure to mitigate affirmative defense.[7] Defendants counter that because this issue "is one of first impression in this Circuit" and "[d]istrict courts in other circuits who have addressed this issue are split on it," whether the mitigation defense can be maintained is an unclear question of law. Def. Brief at 9. Thus, defendants argue that plaintiff's motion to strike this defense should be denied. The court disagrees.

Although defendants appear to be correct in asserting that no court in this Circuit has considered this issue in a reported decision, the case law overwhelmingly supports plaintiff's argument that the mitigation defense cannot be maintained. *See, e.g., Kerr*, 804 F.Supp. at 1099 ("The court believes the public policy rationale of the no duty rule as expressed in *Burdette* is persuasive and that the affirmative defenses of contributory fault and mitigation of damages should be stricken.").

Moreover, the case relied on almost exclusively by defendants, *FDIC v. Ashley*, 749 F.Supp. 1065, 1069 (D.Kan.1990), has been bluntly criticized for its holding that a mitigation of damages defense can be maintained against the FDIC. In *RTC v. Scaletty*, 810 F.Supp. 1505 (D.Kan.1992), the court noted that the *Ashley* court held that a failure to mitigate defense was available for two reasons: 1) because the FDIC, as receiver, owed an obligation "to mitigate damages on behalf of the institution's owners and creditors"; and, 2) because the mitigation requirement "'is not actually a 'duty,' but a limitation on the amount of damages recoverable by the plaintiff.'" *Id.* at 1517. As the *Scaletty* court pointed out, the *Ashley* court's rationale is flawed in that it: 1) "goes against the weight of authority," *id.;* 2) does not address the alternative problem with the defense, sovereign immunity; 3) fails to consider 12 U.S.C. § 1821(d)(13)(D), which provides that no court shall have jurisdiction over "any

---

**6.** Because the court concludes that defendants' contributory negligence defense is insufficient as a matter of law because the FDIC owes no duty to the officers and directors of the Bank, the court does not consider plaintiff's argument that the Supreme Court's holding in *United States v. Gaubert*, 499 U.S. 315, ——, 111 S.Ct. 1267, 1275, 113 L.Ed.2d 335 (1991)—that the Federal Torts Claims Act does not waive a federal governmental entity's sovereign immunity for suits based on the entity's discretionary actions—also requires the court to strike the contributory negligence defense.

**7.** Again, plaintiff assumes that this defense is aimed at the FDIC's pre-takeover, regulatory actions. *See* Plt. Brief at 14 (stating that "any actions that the FDIC could have taken to reduce damages prior to closing are legally irrelevant"). However, as the court's discussion of the "no duty" rule makes clear, the FDIC owes no duty to defendants in either its capacity as receiver or as regulator. Thus, whether the mitigation defense is aimed at the FDIC's pre-takeover or post-takeover activities is irrelevant.

**310**

claim relating to any act or omission of ... the [FDIC] as receiver"; and, 4) "is contrary to public policy," *Scaletty,* 810 F.Supp. at 1518.

■ This court agrees with each criticism levelled at the *Ashley* decision by the *Scaletty* court. Thus, defendants' assertions to the contrary notwithstanding, the court is not persuaded that the question of whether a failure to mitigate defense can be maintained against the FDIC is a substantial, disputed question of law. Instead, the court is persuaded that the FDIC owes no duty of any kind to these defendants, as discussed *supra.* Thus, the court concludes that the FDIC owes no duty to these defendants to mitigate any damages arising out of defendants' alleged negligence and breach of fiduciary duties. Accordingly, the failure to mitigate defense will be stricken.[8]

### 3. Estoppel, Waiver and Unclean Hands

■ Plaintiff asserts that "no affirmative defense based on estoppel can be asserted against the FDIC." Plt. Brief at 10 (relying on *Office of Personnel Management v. Richmond,* 496 U.S. 414, 110 S.Ct. 2465, 110 L.Ed.2d 387 (1990)). Plaintiff further argues that "[a]s in the case of estoppel, the defenses of waiver and unclean hands are unavailable and may not be asserted against the FDIC." Plt. Brief at 11 (relying on *FDIC v. Isham,* 782 F.Supp. 524, 532 (D.Colo.1992), *FDIC v. Arceneaux,* 1990 WL 357532 (W.D.La.1990) and *FDIC v. O'Melveny & Meyers,* 969 F.2d 744 (9th Cir.1992)).

Defendants assert the same syllogism with regard to these defenses as they asserted with regard to the failure to mitigate defense. First, defendants acknowledge that most courts have stricken these defenses when asserted against the FDIC. However, defendants cite two cases in which these defenses were not stricken, *FDIC v. Harrison,* 735 F.2d 408 (11th Cir.1984) and *FDIC v. Spain,* 796 F.Supp. 241 (W.D.Tex.1992). Defendants then argue that because courts

are in disagreement about whether these defenses can be maintained against the FDIC and because the issue is one of first impression in this Circuit, the court should not resolve this "disputed and substantial question of law" on a motion to strike. Again, the court disagrees with defendants' contention.

The court notes first that the many cases relied upon by plaintiff do not hold that equitable defenses such as estoppel and waiver can *never* be asserted against the FDIC. *See, e.g., O'Melveny,* 969 F.2d at 752 (noting that "it does not necessarily follow that equitable defenses can never be asserted against FDIC acting as a receiver; we hold only that the bank's inequitable conduct is not imputed to FDIC"). However, the cases relied upon by plaintiff do hold that estoppel and waiver cannot be asserted against the FDIC by former officers or directors of a failed financial institution. *See, e.g., Scaletty,* 810 F.Supp. at 1518–19. Moreover, the cases relied on by defendants can be distinguished on this basis, as well as others, because they do not involve assertions of estoppel by such defendants.

In *Harrison,* the FDIC, acting as the receiver of a failed financial institution, sued guarantors of a debt owed to the institution by certain debtors. 735 F.2d at 409. In considering whether the FDIC could be equitably estopped from collecting this debt, the court stated that:

> Activities undertaken by the government primarily for the commercial benefit of the government or an individual agency are subject to estoppel while actions involving the exercise of exclusively governmental or sovereign powers are not.

*Id.* at 411. The court then noted that "[i]n its dealings with [the guarantors], the Corporation performed essentially the same function any other bank that may have acquired some of the assets of a failed bank." *Id.* at 412. Thus, the court found "no reason not to apply the traditional rules of equitable estoppel to the conduct of the FDIC."[9] *Id.*

---

8. The court leaves open whether defendants should be able to contend that losses caused by the FDIC were not proximately caused by the defendants.

9. The facts in *Spain* are almost identical to the facts in *Harrison.* In *Spain,* the FDIC again commenced an action seeking payment on a promissory note executed in favor of the failed financial institution. However, the *Spain* court

This case is readily distinguishable from *Harrison*, which explicitly limited its holding to the situation in which the FDIC "acts in its corporate capacity to collect a debt acquired from an insolvent bank." *Id.* at 413. In this case, the FDIC is not acting to recover the Bank's outstanding loans. Rather, the FDIC is seeking to relieve the taxpayers of financial losses allegedly caused by the actions of former officers and directors of the Bank. As such, public policy clearly militates against the assertion of the equitable defenses of estoppel, waiver or unclean hands against the FDIC in this case. Accordingly, the court concludes that these defenses are insufficient as a matter of law and strikes them.

### 4. Ratification

■ The court must also strike defendants' "ratification" defenses, which posit that the FDIC is estopped from asserting its claims against defendants because, in its regulatory capacity, the FDIC approved or ratified the defendants' actions.[10] Plaintiff correctly argues that to the extent that defendants' conduct may have been approved by the FDIC acting in its regulatory capacity, "it may not be interposed as an affirmative defense [in this action] ..." Plt. Brief at 12. This is so for two reasons.

First, it is well-settled that claims involving the FDIC's actions as a regulator are not relevant in suits brought by the FDIC as receiver. *See supra*. Second, this defense is simply another form of an estoppel defense. As discussed *supra*, public policy precludes the assertion of "the affirmative defenses of contributory negligence, estoppel and mitigation of damages." *FSLIC v. Burdette*, 696 F.Supp. 1183 (E.D.Tenn.1988). Because an estoppel defense cannot be asserted against

the FDIC in this case, the ratification defense is insufficient as a matter of law and is stricken.

### 5. Collateral Estoppel

■ Finally with regard to defenses involving, at least peripherally, actions of the FDIC, two defendants Salvatore and Irish have asserted that the FDIC's suit is barred by collateral estoppel. Plaintiff argues that there is no basis for a collateral estoppel defense in light of the fact that "the FDIC has never been a party or in privity with a party in any litigation which has gone to final adjudication on the merits regarding any of the issues raised by this lawsuit." Plt. Brief at 11. Defendants offer no opposition to plaintiff's motion to strike this defense.[11]

As the Third Circuit has recently stated:

Issue preclusion, formerly titled collateral estoppel, proscribes relitigation when the identical issue already has been fully litigated. Issue preclusion may be invoked when: (1) the identical issue was decided in a prior adjudication; (2) there was a final judgment on the merits; (3) the party against whom the bar is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the bar is asserted had a full and fair opportunity to litigate the issue in question.

*Board of Trustees of Trucking Employees of N.J. Welfare Fund, Inc. v. Centra, Inc.*, 983 F.2d 495, 505 (3d Cir.1992). Although none of these requirements for a defense of collateral estoppel may be present in this case, as plaintiff asserts, such a conclusion would necessitate a review of factual matters outside of the pleadings and thus is not appropriately resolved on a motion to strike. Accordingly,

---

never decided whether the FDIC could be estopped from asserting its claim because it found that one of the elements of estoppel, reliance, was clearly lacking. *Spain*, 796 F.Supp. 241, 245 (W.D.Tex.1992). Thus, defendants' reliance on *Spain* is misplaced. In addition, the court notes that the *Spain* court, among others, criticized the *Harrison*'s court proprietary/sovereignty distinction, noting that the Supreme Court has not made such a distinction. *Id.* at 245.

**10.** For example, defendant Reddin's 11th affirmative defense states that she "reasonably relied

upon the representations and recommendations of regulatory agencies concerning the conditions of [the Bank] and actions taken or to be taken in light of those representations and/or recommendations and plaintiff is therefore estopped from asserting its present claims." Reddin Answer at 7.

**11.** This is another of the affirmative defenses that plaintiff moves to strike and that defendants' brief does not address. *See supra* note 3.

the court declines to strike defendants' collateral estoppel defense.[12]

### B. Causation Defenses

■ The court turns now to the next set of affirmative defenses that plaintiff moves to strike. These defenses can be characterized generally as defenses involving issues of causation, and more specifically as either: 1) defenses asserting that the answering defendant(s) did not cause plaintiff's losses (the "straight causation defense"); and 2) defenses asserting that plaintiff's losses were caused by other defendants, third parties, or supervening/intervening causes in general (the "other/supervening causation defense").

Plaintiff argues that all of the causation defenses, including the other/supervening causation defenses, are simply assertions by the defendants that their conduct was not the proximate cause of the Bank's losses. *See* Plt. Brief at 20. Because the FDIC must establish proximate cause as an element of its prima facie case, plaintiff asserts that defendants cannot assert lack of proximate cause as an affirmative defense.

Defendants concede that "an affirmative defense that no action or inaction by them caused the FDIC's alleged damages" cannot be maintained as "such assertions are already in issue because of the Complaint." Def. Brief at 5 n. 5 (citing *FDIC v. Renda,* 692 F.Supp. 128, 133 (D.Kan.1988), in which the court struck defenses asserting that the defendants were not the proximate cause of a financial institution's losses). Indeed, as the *Kerr* court stated:

> In order to prevail on a negligence claim the RTC must first establish that the defendants were negligent and second that such negligence was a proximate cause of the losses sustained ... Proximate cause is therefore an element of the claim and not an affirmative defense. While this appears to be a fine distinction, the court believes it is a distinction made necessary under the law.

804 F.Supp. at 1100; *see also In re Sunrise Securities Litig.,* 138 F.R.D. 60, 62 (E.D.Pa.

1991) (holding that because "the defendants may argue that the FDIC has not made out a *prima facie* case [on grounds that] it has failed to demonstrate proximate cause," they are entitled to discovery of documents that may be relevant to the issue of causation). Thus, although it is clear both that defendants can argue at trial that their actions were not the proximate cause of the Bank's losses and that they are entitled to discovery on the issue of causation, it is also clear that the defendants cannot assert as an affirmative defense that they did not cause the Bank's losses. Accordingly, the court strikes these "straight" causation defenses.

■ Defendants argue, however, that a relevant distinction can be made between the straight causation defense and the other/supervening causation defense, which should lead the court to deny plaintiff's motion to strike the other/supervening cause defenses. Specifically, defendants argue that:

> The FDIC completely misconceives the nature and context of [defendants'] fourth and seventh affirmative defenses ... which relate to the actions of other parties which contributed to the FDIC's alleged damages and not to an element of the FDIC's prima facie case. Such affirmative defenses are permitted as a matter of law to limit liability.

Def. Brief at 5. Defendants rely on *FDIC v. Renda,* 692 F.Supp. 128 (D.Kan.1988) to support of their position. In *Renda,* the court denied the FDIC's motion to strike defendants' affirmative defense asserting that the financial institution's losses were attributable to the negligence or fault of others, holding that the defendants "should not be precluded from presenting evidence that other parties contributed to the plaintiffs' damages in an attempt to reduce their own liability." *Id.* at 137.

In its reply brief, plaintiff urges the court not to follow "the minority view reflected in *Renda.*" Plt. Reply at 4. In addition, plaintiff cites to other cases in which courts have struck affirmative defenses asserting intervening causes for the losses suffered by a

---

**12.** The court notes, however, that on the basis of the information currently before the court it would appear that the collateral estoppel defense may have been asserted without the proper basis in fact required under Federal Rule of Civil Procedure 11.

financial institution. *See, e.g., First Fin. Sav. Bank, Inc. v. American Bankers Ins. Co.*, 783 F.Supp. 963, 969 (E.D.N.C.1991). Plaintiff also argues that "the affirmative defenses which refer to superseding and intervening causes merely assert lack of proximate causation in an indirect manner." Plt. Brief at 20.

The court agrees with plaintiff. Defendants may certainly argue and present evidence at trial that their actions were not the proximate cause of the Bank's losses because actions by others or other supervening actions were the proximate cause of those losses. However, such evidence and argument goes to whether plaintiff has carried its burden in establishing that defendants were the proximate cause of the Bank's losses. It is not affirmative in that defendants' do not bear the burden of proving that intervening, supervening or other causes resulted in the Bank's losses. Accordingly, the court concludes that all of the causation affirmative defenses are insufficient as a matter of law and strikes them.[13]

### C. The Statute of Limitations Defense

Plaintiff also moves to strike defendants' statute of limitations defense. Defendants oppose.

Under the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA"),

> "the applicable statute of limitations with regard to any action brought by the [FDIC] as conservator or receiver shall be ... in the case of any tort claim, the *longer* of—(I) the 3–year period beginning on the date the claim accrues; or (II) the period applicable under State law."

12 U.S.C. § 1821(d)(14)(A). The statute further provides that "the date on which the statute of limitation begins to run ... shall be the *later* of—(i) the date of the appointment of the Corporation as conservator or receiver; or (ii) the date on which the cause of action accrues." *Id.* at § 1821(d)(14)(B).

The parties agree that under FIRREA, New Jersey's six-year statute of limitations period for tort claims applies to the claims at issue in this case. In addition, the parties also agree that all claims that had not expired under the six-year statute of limitation when the FDIC was appointed as the Bank's receiver are within the statute. In short, the parties agree that the FDIC may sue on all claims arising on or after October 5, 1984.

Because the FDIC concedes in its moving papers that it "will only seek damages for claims arising on or after October 5, 1984," Plt. Brief at 12–13, plaintiff argues that there is no statute of limitations issue in this case. Defendants counter that because the FDIC has not specified the dates on which the alleged negligent and grossly negligent acts of defendants occurred, it is impossible to ascertain whether some of the claims asserted may have accrued before October 5, 1984 and thus expired before the FDIC was appointed as the Bank's receiver. Def. Brief at 15.

The court agrees with defendants. As the court noted *supra,* motions to strike are disfavored because they require the court to ascertain the legal merit of an affirmative defense before the underlying factual record has been developed fully through discovery. Plaintiff's attempt to eliminate defendants' statute of limitations defense highlights exactly the concern that a motion to strike might later prove to have been improvidently granted. The fact that plaintiff promises not to bring suit for claims *it believes* accrued before October 5, 1984 does *not* mean that plaintiff's claims in fact accrued after this date. It is possible that the claims the FDIC believes to have accrued after this date may be found to have accrued before it. As such, striking defendants' statute of limitations defenses would deprive defendants of their rightful opportunity to challenge plaintiff's view of when these claims accrued. Accordingly, the court denies plaintiff's motion to strike defendants' statute of limitations affirmative defense.

---

**13.** The court notes that defendants are still entitled to discovery on the issue of causation, *see Sunrise Securities,* 138 F.R.D. at 62, and thus plaintiff has accomplished very little, if anything, by including the causation defenses in its motion to strike.

**314**

### D. The Laches Defense

 Plaintiff states that "[i]t is well-established that neither the federal government nor its instrumentalities are subject to the defense of laches." Plt. Brief at 14. In support of both the general principle that laches is not available against the government and the specific principle that this defense is not available against the FDIC, plaintiff cites numerous cases. *See id.*

As plaintiff notes, defendants do not address plaintiff's argument that the defense of laches is not available against the FDIC. Plt. Reply at 10. Defendants merely assert that, for the same reason their statute of limitations defense should not be stricken, their laches defense also should not be stricken. Because the case law supports plaintiff's contention that the defense of laches is not available against the FDIC and because defendants' opposition is wholly inadequate, the court strikes defendants' affirmative defense of laches.

### E. Remaining Defenses

 Finally, plaintiff argues that all of the remaining defenses, excepting the failure to state a claim and the failure to join indispensable parties defenses, are either bare conclusory statements/denials or they are immaterial, and thus they should be stricken. Defendants oppose plaintiff's motion insofar as it includes their tenth affirmative defense, which provides that defendants rely on all affirmative defenses asserted by the other defendants to the action (the "all-inclusive" defense). Defendants argue that the FDIC's discussion as to why these remaining defenses should be stricken is superficial and unsupported.

Although it is clear that certain of the remaining affirmative defenses are not affirmative in that they are mere denials of wrong-doing, *see, e.g.,* Hildebrandt Answer, Defenses 17, 18 and 19, plaintiff's discussion of the remaining defenses at issue is hardly thorough. Moreover, plaintiff's argument, made for the first time in its reply brief, that the "all-inclusive" defense should be stricken because it "may violate Rule 11," for which plaintiff cites no authority, does not provide this court with sufficient basis to strike this defense. In short, the court does not consider the policy interests that support a motion to strike—the elimination of unnecessary and expensive discovery—to be sufficiently implicated by the remaining affirmative defenses to strike them on the basis of plaintiff's limited discussion of their legal sufficiency.

### Conclusion

For the foregoing reasons, plaintiff's motion to strike all but two of defendants' affirmative defenses is granted in part and denied in part.