UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 97-10315
No. 97-10624

_____

SEARCY M. FERGUSON, JR.,

Plaintiff-Appellant,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION, Etc., Et Al.,

Defendants,

FEDERAL DEPOSIT INSURANCE CORPORATION, in its
Corporate capacity as Liquidator of the
Union Bank & Trust,

Defendant-Appellee.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

January 6, 1999

Before HIGGINBOTHAM, DAVIS, and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge.

     As Appellant Searcy M. Ferguson, Jr. conceded at oral argument
for this appeal, the disposition of this case hinges on the
following issue:  whether the agents of the Federal Deposit
Insurance Corporation dealing with Ferguson had authority to enter
into a global settlement of his indebtedness on numerous promissory
notes.  We **AFFIRM**.

I.

During the 1980s, Ferguson was a shareholder and officer of Union Bank and Trust. In 1986 and 1987, Ferguson borrowed several million dollars from Union Bank pursuant to nine promissory notes (the Nine Notes). Union Bank failed in 1988, and the FDIC was appointed receiver.

At that time, the Nine Notes were delinquent. In May 1988, the Nine Notes were transferred, pursuant to a contract of sale, from the FDIC *as receiver* to the FDIC in its *corporate capacity*.

In September 1988, Ferguson contacted Ronald Bieker, the FDIC assistant account officer assigned to Ferguson's account, regarding a settlement of the Nine Notes. The offer was rejected.

Also in September 1988, Ferguson contracted to sell property he owned in Kaufman County, Texas (the Kaufman Property), part of which served as part or all of the collateral for seven of the Nine Notes. Ferguson claims that he then offered to pay the FDIC $1.727 million from the Kaufman Property sale for a release of liens on the Kaufman Property *and* a global settlement of the Nine Notes; and that the FDIC accepted this offer.

The FDIC counters that Ferguson offered to pay $1.365 million (the principal and interest due on only one of the notes) in exchange for a release of the liens on the Kaufman Property; and that Ferguson also offered to pay the balances on two additional notes, for a total of $1.727 million for the three notes.

2

On 14 November 1988, Ferguson's escrow agent, by letter to the FDIC, provided three checks payable to the FDIC (totaling $1.727 million), as well as seven standard Texas release of lien forms for the Kaufman Property. Each release of lien form contained a covenant that the "holder of the note acknowledges its payment and releases the property from the lien". The releases were forwarded to Anna Croteau, Department Head of Commercial Loans at the FDIC and a member of the Senior Credit Review Committee. She executed the releases.

In February 1989, Ferguson attempted to settle the indebtedness on the remaining notes. The FDIC maintains that he did so because he was aware that he had only settled as to *three* of the notes. Ferguson, however, claims that he made the efforts only after the FDIC surprised him by claiming that what he understood to be a global settlement was instead only a settlement on three of the notes and a release of the liens on the Kaufman Property. In any event, these subsequent negotiations failed.

In the fall of 1991, Ferguson filed this action in Texas state court, seeking, *inter alia*, a declaratory judgment that the FDIC received full payment through an accord and satisfaction or a novation, or that the FDIC was precluded from recovery based on estoppel, ratification, waiver, release, and failure of consideration. The FDIC removed this action to federal court,

denied liability on Ferguson's claims, and counterclaimed for the indebtedness on the remaining six notes.

The FDIC moved for summary judgment on Ferguson's affirmative defenses of accord and satisfaction, novation, waiver, estoppel, failure of consideration, fraud, and ratification, based, among other things, on its contention that only the FDIC Credit Review Committee had the authority to approve a global settlement. In support of this claim, the FDIC submitted evidence that Bieker and Croteau lacked such authority.

On cross-motions for summary judgment, the district court ruled that the evidence submitted by the FDIC was not rebutted by Ferguson; and that it established that Bieker and Croteau did not have authority to negotiate a global settlement or release a note. Based on its lack of authority ruling, the district court granted summary judgment for the FDIC on Ferguson's defenses of accord and satisfaction, novation, waiver, estoppel, failure of consideration, fraud, and ratification.

Accordingly, only two issues were tried to the jury: (1) what amount the FDIC was entitled to recover on the remaining six notes; and (2) whether Ferguson established the affirmative defense that the FDIC failed to pay the six notes in accordance with his instructions. The jury found that Ferguson failed to prove this defense and, among other things, awarded principal and interest due

4

the FDIC. The district court entered judgment for the FDIC for, *inter alia*, $520,797.

## II.

Ferguson challenges three rulings by the district court: (1) the partial summary judgment in favor of the FDIC on the issue of authority; (2) the admission of parol evidence regarding the terms of the releases; and (3) the admission of evidence concerning the subsequent settlement negotiations. At oral argument, Ferguson conceded that, if he did not prevail on the authority issue, "the other two issues are really moot". Accordingly, because we conclude that Bieker and Croteau lacked authority to enter into a global settlement, we need not address the other two issues. (On motion by the FDIC, its cross-appeal was dismissed.)

For the authority issue, decided by summary judgment, we conduct the requisite *de novo* review. *E.g., Thompson v. Georgia Pacific Corp.*, 993 F.2d 1166, 1167 (5th Cir. 1993). Viewing the evidence in the light most favorable to the nonmovant, we will affirm "when the pleadings and evidence illustrate that no genuine issue exists as to any material fact and that the movant is entitled to judgment or partial judgment as a matter of law". *Burns v. Harris County Bail Bond Board*, 139 F.3d 513, 517-18 (5th Cir. 1998); *Hogan Systems, Inc. v. Cybresource Int'l, Inc.*, 158 F.3d 319, 322 (5th Cir.), *rehearing and suggestion for rehearing en banc denied*, ___ F.3d ___ (5th Cir. 1998); *Pollock v. FDIC*, 17 F.3d

5

798, 802 (5th Cir. 1994); *see* FED. R. CIV. P. 56. "To win summary judgment, the movant must show that the evidence in the record would not permit the nonmovant to carry its burden of proof at trial." *Smith v. Brenoettsy*, 158 F.3d 908, 911 (5th Cir. 1998). To rebut this, the nonmovant may then present evidence showing that a material fact issue exists to be resolved at trial. *Id.*; *Burns*, 139 F.3d at 518.

## A.

Ferguson first contends that the district court erred in applying federal, rather than Texas, law to his affirmative defenses (accord and satisfaction, novation, waiver, estoppel, failure of consideration, fraud, and ratification). Ferguson bases this claim on *O'Melveny & Myers v. FDIC*, 512 U.S. 79 (1994), in which the Supreme Court held that, in an action by the FDIC, acting as receiver, in which the defendant raised the affirmative defense of imputation, the State's law controlled. *Id.* at 81-82, 86. Reminding that "[t]here is no federal general common law", *id.* at 83 (quoting *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)), the Court noted that the FDIC had not identified any "significant conflict [between the use of state law and] some federal policy or interest", *id.* at 88 (quoting *Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68 (1966)); and that the FDIC, because it was acting as receiver, was asserting the rights of the failed bank, rather than its own. *Id.* at 85.

6

In maintaining that *O'Melveny* requires the application of Texas state law here, Ferguson relies upon *FDIC v. Massingill*, 30 F.3d 601 (5th Cir. 1994), and *Davidson v. FDIC*, 44 F.3d 246, 250 (5th Cir. 1995), two post-*O'Melveny* decisions addressing similar issues. Further, Ferguson asserts that there is no conflicting federal interest at stake to justify the use of federal law.

1.

The FDIC responds in part that Ferguson is precluded from presenting this issue, claiming that he failed to raise it in district court. Needless to say, we "will not address an argument raised by a party for the first time on appeal ... unless it meets the plain error standard". *Forbush v. J.C. Penney Co.*, 98 F.3d 817, 822 (5th Cir. 1996).

Obviously, Ferguson did not need to plead the applicability of Texas law in order to preserve this choice of law question. *Kucel v. Walter E. Heller & Co.*, 813 F.2d 67, 74 (5th Cir. 1987). On the other hand, he did have "an obligation to call the applicability of another state's law to the [district] court's attention in time to be properly considered". *Id.*

Although he should have more completely presented the applicability-of-Texas-law-issue, Ferguson did raise it in district court. Among other things, in his summary judgment motion, as well as in his response to the FDIC's, Ferguson supported his affirmative defenses with Texas law.

7

2.

As Ferguson correctly notes, in both *Davidson* and *Massingill*, our court recognized the import of *O'Melveny*. *Massingill*, 30 F.3d at 604, held that the defense of impairment of collateral in an FDIC collection action was controlled by state, rather than federal, law. And *Davidson*, 44 F.3d at 249, held that the state statute of limitations applied to a deed of trust acquired by the FDIC as receiver before the enactment of one of the provisions of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989, 12 U.S.C. § 1821(d)(2)(A)(i), Pub. L. No. 101-73, 103 Stat. 183 (1989). Our court noted, based on *O'Melveny*, that the FDIC had not advanced a significant federal interest warranting displacement of state law through its argument that an adverse decision would have a general impact on the public fisc; and that the FDIC was acting in its capacity as a receiver when it acted, rather than in its corporate capacity. *Id.* at 250, 252.

Thus, we are faced with whether Texas or federal law should be applied to the authority issue. Although the district court delineated alternative reasons why Ferguson's affirmative defenses failed, it stated that, as Ferguson concedes here, the authority issue was controlling. We agree with the district court that federal law applies to the authority issue.

Although *O'Melveny* disclaimed again the existence of a general federal common law and required the application of state law to

8

claims made by or against the FDIC in its capacity as a receiver, it did not purport to overrule case law holding that the Government is not bound by the actions of agents acting outside the scope of their authority.

> Whatever the form in which the Government functions, anyone entering into an arrangement with the Government takes the risk of having accurately ascertained that he who purports to act for the Government stays within the bounds of his authority.... And this is so even though, as here, the agent himself may have been unaware of the limitations upon his authority.

*Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 384 (1947). "[T]hose who deal with the Government are expected to know the law and may not rely on the conduct of Government agents contrary to law." *Heckler v. Community Health Services*, 467 U.S. 51, 63 (1984). Moreover, both the Supreme Court and our court have held that, in most cases, the Government cannot be estopped based on unauthorized representations made by its agents. *See, e.g., Office of Personnel Management v. Richmond*, 496 U.S. 414, 432–33 (1990) (no estoppel against Government for payment of public funds); *United States v. Perez-Torres*, 15 F.3d 403, 407 (5th Cir. 1994) (difficult to succeed in estopping Government based on representations of its agents, and "change in position in reasonable reliance on the misrepresentation" must be demonstrated); *Fano v. O'Neill*, 806 F.2d 1262, 1265 (5th Cir. 1987)

("party seeking to estop the government bears a quite heavy burden").

Further, as stated in **Davidson**, "[t]he Supreme Court has recently made clear [in **O'Melveny**] that the capacity in which the FDIC acts may have a determinative impact on whether a state or federal rule should control". **Davidson**, 44 F.3d at 251. Here, Bieker and Croteau were acting as agents of the FDIC-Corporate. They derived their authority (if any) from the FDIC in its *corporate* capacity, because the FDIC-Corporate purchased the Nine Notes in May 1988, before any settlement negotiations between Ferguson and the FDIC began. *See* **Beighley v. FDIC**, 868 F.2d 776, 779 n.7 (5th Cir. 1989) (FDIC as receiver sells assets of failed bank to FDIC as insurer, acting in its corporate capacity, and FDIC-Corporate then "attempts to collect on these assets to reduce loss to the insurance fund").

This is unlike the situation in **O'Melveny**, in which the Court noted that "[t]he rules of decision at issue here do not govern the primary conduct of the United States or any of its agents or contractors, but affect only the FDIC's rights and liabilities, *as receiver*, with respect to primary conduct on the part of private actors that has already occurred". **O'Melveny**, 512 U.S. at 88 (emphasis added). Here, it is the action of the Government agents and their authority to so act that is at issue, rather than the

10

impact on the FDIC, acting as receiver, of imputing the prior acts of agents of the failed bank.

In **Massingill**, 30 F.3d at 604, our court noted that applying federal law to the appellant's impairment of collateral defense would require the *creation* of a substantive federal common law rule of decision, which would run contrary to **O'Melveny**. But here, the rule that the Government is not liable for the unauthorized acts of its agents has been long-established.

The case at hand is also distinguishable from **Davidson**, 44 F.3d at 251, in which our court emphasized that the FDIC was acting "in the limited capacity of receiver". Again, concerning the Nine Notes, the FDIC was acting in its *corporate* capacity as the holder of those notes.

Thus, the district court correctly applied federal law to the issue of whether Bieker and Croteau had authority to enter into a global settlement.

### B.

The district court held also that Bieker and Croteau lacked authority to enter into a settlement. We agree.

On the cross-motions for summary judgment, the FDIC presented evidence that all settlements had to be approved by the Credit Review Committee. Ferguson presented no evidence that Bieker or Croteau were given the authority to enter into a global settlement, but instead based his claims upon their actions.

11

1.

Because Ferguson asserted affirmative defenses, he would have had the burden of proving them at trial. *See, e.g.,* ***Crescent Towing & Salvage Co., Inc. v. M/V Anax***, 40 F.3d 741, 744 (5th Cir. 1994); ***Fontenot v. Upjohn Co.***, 780 F.2d 1190, 1194 (5th Cir. 1986). And, as stated, the Government is not bound by the unauthorized acts of its agents. *E.g.,* ***Richmond***, 496 U.S. at 419-20 ("Government could not be bound by the mistaken representations of an agent unless it were clear that the representations were within the scope of the agent's authority"); ***Heckler***, 467 U.S. at 63 ("Men must turn square corners when they deal with the Government" (quoting ***Rock Island, A. & L.R. Co. v. United States***, 254 U.S. 141, 143 (1920)); ***Merrill***, 332 U.S. at 383-84; ***Rosas v. United States Small Business Admin.,*** 964 F.2d 351, 360 (5th Cir. 1992) ("It is a familiar tenet of government contracts that the government cannot be bound by the unauthorized acts of its agents"); ***United States v. D'Apice***, 664 F.2d 75, 78 (5th Cir. 1981) ("It is well established that the federal government will not be bound by a contract or agreement entered into by one of its agents unless such agent is acting within the limits of his actual authority"); ***Dresser Indus., Inc. v. United States***, 596 F.2d 1231, 1236 (5th Cir. 1979); ***Hicks v. Harris***, 606 F.2d 65, 68-69 (5th Cir. 1979); ***Robinson v. Vollert***, 602 F.2d 87, 94 (5th Cir. 1979); ***United States v. State of Florida***,

12

482 F.2d 205, 210 (5th Cir. 1973); *Posey v. United States*, 449 F.2d 228, 234 (5th Cir. 1971).

Thus, to have succeeded at trial, Ferguson would have had to prove that Bieker and Croteau acted with authority; but, as noted, on summary judgment, he presented no evidence on this point. Additionally, at least two other federal court decisions have recognized that the Credit Review Committee is the only FDIC entity that can approve settlements. *FDIC v. Royal Park No. 14, Ltd.*, 2 F.3d 637, 641 (5th Cir. 1993) (affirming grant of summary judgment and noting district court's observation that Credit Review Committee is only entity with authority to approve settlements); *FDIC v. Spain*, 796 F. Supp. 241, 243 (W.D. Tex. 1992) (finding that only Credit Review Committee had authority to settle). Further, summary judgment evidence presented by the FDIC shows that the Credit Review Committee was solely responsible for the approval of settlements and that it did *not* approve a global settlement.

2.

Ferguson also contends that, even if Bieker and Croteau lacked *actual* authority to enter into a global settlement, they had *apparent* authority to do so, citing *Valley Ranch Dev. Co. v. FDIC*, 960 F.2d 550, 554 (5th Cir. 1992), for the proposition that *apparent* authority exists if a reasonable person, using diligence and discretion, would have believed that Bieker and Croteau had the authority to enter into a global settlement. In support of his

13

apparent authority claim, Ferguson points to the actions of Bieker and Croteau in negotiating settlements, Croteau's signing the lien releases when the cover letter required the signature of an authorized representative, and the FDIC's failure to communicate to Ferguson the FDIC's internal restrictions on the authority of Bieker and Croteau.

As discussed, those dealing with agents of the Government risk that they have accurately determined that the agent is acting within the bounds of his authority, **Merrill**, 332 U.S. at 384. Even assuming that the basis for Ferguson's apparent authority contention is correct as a matter of law, the contention still fails; he did not present any evidence upon which we can conclude that a *reasonable* person, exercising diligence and discretion, would have believed that Bieker and Croteau had the authority to enter into a global settlement.

### III.

Because Ferguson conceded at oral argument that the authority issue is dispositive, and because we conclude that Bieker and Croteau did not have the requisite settlement authority, the judgment is

*AFFIRMED.*

14